## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| AMANDA MALPHURS, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | |
| COOLING TOWERS SYSTEMS, | ) | _____ |
| INC., and JOE COATES, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff AMANDA MALPHURS hereby states claims against

Defendant COOLING TOWERS SYSTEMS, INC. and Defendant JOE

COATES arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

(the "FLSA"), and Georgia law based on the grounds set forth below.

### *<u>Jurisdiction</u>*

1.     This Court has original subject-matter jurisdiction pursuant to

28 U.S.C. § 1331 because this action arises under 29 U.S.C. § 207, pursuant

to 28 U.S.C. § 1337 because this action arises under the FLSA, which is an

Act of Congress regulating commerce, and pursuant to 29 U.S.C. § 216(b)

which allows actions arising under the FLSA to be maintained in any federal

court of competent jurisdiction.  This Court has supplemental jurisdiction

over all of Plaintiff MALPHURS' state-law claims under Georgia law,

pursuant to 29 U.S.C. § 1367, because the state-law claims are so related to the Plaintiff's claim within the Court's original jurisdiction that such state-law claims form part of the same case or controversy under Article III of the United States Constitution.

### *The Parties*

2.     Plaintiff AMANDA MALPHURS ("Plaintiff MALPHURS") is a female who, at all times relevant to this action, resided and was employed in this judicial district.

3.     From at least as early as on or about the end of November 2011 to at least as late as on or about May 2012, Defendant COOLING TOWERS SYSTEMS, INC. ("Defendant CTS"), a corporation organized and existing under the laws of Georgia residing in Bibb County, Georgia, doing business within this judicial district.

4.     From at least as early as on or about the end of November 2011 to at least as late as on or about May 2012, Defendant JOE COATES ("Defendant COATES"), was an individual residing in Bibb County, Georgia, doing business within this judicial district.

### *Grounds for this Action*

5.     From at least as early as on or about the end of November 2011 to at least as late as on or about May 2012, Plaintiff MALPHURS was an hourly-paid employee of Defendant CTS and Defendant COATES, whose job

duties included working in Defendants' warehouse, posting cooling tower lines and related equipment for sale in interstate commerce by Defendants on the eBay® internet website, and performing other office work.

6.    Throughout Plaintiff MALPHURS' employment with Defendant CTS and Defendant COATES, she was denied proper overtime compensation required by federal law by Defendant CTS and Defendant COATES.

7.    At all times relevant to this action:

    a.    Defendant CTS manufactured cooling tower lines and related equipment for sale, and sold, in interstate commerce and through financing arrangements made in interstate commerce to, among others, industrial contractors, mechanical consulting and design engineers, chemical manufacturers, food and beverage manufacturers and processors, refrigeration warehouse companies, industrial buyers, and utility companies;

    b.    Defendant CTS had an annual gross volume of sales made that was more than $500,000;

    c.    Defendant CTS had employees engaged in commerce, including the sale in interstate commerce of cooling tower lines and related equipment.

8.    Defendant COATES has been at all relevant times the sole owner of 100 percent of the stock of Defendant CTS.

9.    Defendant COATES has been at all relevant times the principal officer and operator of Defendant CTS.

10.    From at least as early as on or about the end of November 2011 to at least as late as on or about May 2012, Defendant COATES asserted

control of Defendant CTS's day-to-day operations at the location where Plaintiff MALPHURS worked, had some direct responsibility for the supervision of Plaintiff MALPHURS, and participated in the decision not to pay Plaintiff MALPHURS proper overtime compensation.

11.     Defendant COATES, because he was the sole owner and principal officer and operator of Defendant CTS, could not be disciplined or fired for his own conduct in the workplace.

12.     From at least as early as on or about the end of November 2011 to at least as late as on or about May 2012, Defendant CTS had approximately four or five employees, not including Defendant COATES.

13.     From at least as early as the end of November 2011 and continuing to approximately at least as late as the beginning of May 2012, Defendant COATES subjected Plaintiff MALPHURS to frequent, ongoing, and continuous harassing conduct of a sexual nature, most of which occurred at the workplace, which sexually harassing conduct was offensive, unwelcome, outrageous, malicious, wanton, and willful.

14.     During the period of such offensive conduct and sexual harassment, Defendant COATES directed such offensive conduct toward Plaintiff MALPHURS *each and every day* that he was present at the workplace, which included uninterrupted periods of as long as one-and-a-half

months.  Such harassment included offensive ***sexual touching*** and ***sexual***

***comments***.

15.    Defendant COATES's offensive conduct and sexual harassment

toward PLAINTIFF involved unwelcome, aggressive, and humiliating

***touching*** of a sexual nature that included but is not limited to the following:

a.    On numerous occasions, he grabbed her hand and pressed it against his crotch during which she felt his erect penis.

b.    On numerous occasions when she sat at her desk, he walked up to her and pressed his crotch against her body, including her shoulder area, during which she felt his erect penis.  On at least one of these occasions, he rubbed his penis on her shoulder and asked if she would "like some Cherokee peter," referring to his penis – which Raye Kelley witnessed.

c.    On several occasions, he pressed his groin against her buttocks during which she could feel his erect penis.

d.    On numerous occasions, he placed his hands on her breasts, outside her shirt, and squeezed and fondled them.

e.    On several occasions, he placed his hand inside her shirt, inside her bra, and touched her breast.

f.    On several occasions he placed his hands on her breasts, outside her shirt, and squeezed her nipples.

g.    On several occasions, he pulled the front of her shirt out so he could look down her shirt at her breasts.

h.    On numerous occasions he attempted to kiss her, and on at least one occasion made contact with her lips.

i.    On numerous occasions, he placed his arm around her waist.

    j.      On several occasions, he placed his arm around her waist and grabbed her buttocks.

    k.      On at least one occasion, he placed his hand on her inner thigh.

    l.      On one occasion, he approached her and asked her "are you in love yet," then pulled her hair forcing her head back, and said "who is it?"

16.    During the period of his offensive conduct and sexual harassment, Defendant COATES also directed offensive sexual and other abusive **comments** toward Plaintiff MALPHURS of a graphic and vulgar nature that included but are not limited to the following:

    a.      On numerous occasions, he told her "I want to play with your titties, baby."  On one occasion when he attempted to touch her breast and she pulled away, he said, "Are you scared?"

    b.      He often asked her to have sex with him.

    c.      On numerous occasions, he said "I want to fuck you, baby."

    d.      He often told her "I want to give you some of this Cherokee peter" or "Cherokee dick" referring to his penis and the fact that he claimed he was part Cherokee Indian.

    e.      He often asked her for sex and said he would give her a bonus.

    f.      He often asked her "Can you use that big brain of yours to see how we can do it out here," meaning have sex without anyone seeing them.

    g.      He often told her she is "beautiful" and "a good looking woman."

h.   He often talked about his sex life with his wife, and how they do not have sexual intercourse anymore, but that she gave him "hand jobs."

i.   He asked her to have phone sex with him; the last time this occurred was on approximately May 8, 2012.

j.   He often screamed at her, saying "if you having a fucking problem, hit the fucking road," and often used the word "fuck" when talking to her.

k.   He rarely called her by her name, often calling her "baby" or "baby doll."

l.   On one occasion at the end of April, he asked her to meet him for a beer at his house on the pretext of discussing her bonus, to which she agreed. During the meeting, he told her he wanted to sleep with her, but she refused. The next day, he told her he refused to give her the bonus which he had promised her several times before. She asked "are you mad because I refused to sleep with you?" Mr. Coates responded, "Dogs get mad, I get even."

m.   On approximately May 3, 2012, she leaned down next to her desk to put her radio on its base, and he said "ummm, while you're down there," in a suggestive manner, which she interpreted as a reference to performing oral sex.

17.   On numerous occasions, Plaintiff MALPHURS told Defendant COATES to stop his offensive sexual conduct, and she told him such conduct was not appropriate—but Defendant COATES's offensive conduct and sexual harassment toward Plaintiff MALPHURS continued in total disregard of her demands that he stop.

18.    On numerous occasions, Defendant COATES required Plaintiff MALPHURS to work late, accumulating additional uncompensated overtime hours, so that Defendant COATES could be alone with her and engage in the offensive conduct and sexual harassment toward her, as more fully described above in Paragraphs 13-17 and herein incorporated as if realleged.

19.    At various times, Defendant COATES told Plaintiff MALPHURS he would not pay her for the extra overtime hours he required her to work unless she submitted to his offensive sexual demands, as more fully described above in Paragraph 16 herein incorporated as if realleged.

20.    At all relevant times to this action, Defendant COATES was Defendant CTS's sole owner, its principal officer, and its principal operator, and operated Defendant CTS as his alter ego by abusing the corporate form— so therefore Defendant CTS was aware of and had knowledge of:

      a.    all the offensive, outrageous, malicious, wanton, and willful sexually harassing and abusive conduct by Defendant COATES toward Plaintiff MALPHURS; and

      b.    Plaintiff MALPHURS' demand that he stop such conduct, as more fully described above in Paragraphs 13-19 and herein incorporated as if realleged.

21.    At all relevant times to this action, because Defendant COATES was Defendant CTS's sole owner, its principal officer, and its principal operator, Defendant CTS was consciously indifferent to and took no appropriate remedial action of any kind to stop the offensive, outrageous,

malicious, wanton, and willfully abusive and sexually harassing conduct by Defendant COATES against Plaintiff MALPHURS, as more fully described above in Paragraphs 13-19 and herein incorporated as if realleged

22.     As a result of Defendant CTS's actions described above in Paragraph 21, Defendant COATES's offensive and abusive conduct and sexual harassment of Plaintiff MALPHURS continued throughout her employment with Defendant CTS and Defendant COATES.

23.     At all relevant times, because Defendant COATES was the sole owner, and the principal officer and operator of Defendant CTS, Defendant COATES's outrageous, malicious, wanton, and willful sexually harassing conduct, as more fully described above in Paragraphs 13-19 and herein incorporated as if realleged, was therefore the conduct of Defendant CTS.

24.     On or about May 9, 2012, Plaintiff MALPHURS complained to a manager of Defendant CTS about Defendant COATES's offensive and abusive conduct and sexually harassing behavior, but such manager was powerless to take any kind of remedial action because Defendant COATES was the sole owner, and the principal officer and operator of Defendant CTS.

25.     Plaintiff MALPHURS concluded that because of Defendant COATES's outrageous, malicious, wanton, and willful conduct, she could no longer remain in that work environment and that she had no choice but to quit.

26.     Plaintiff MALPHURS has suffered severe emotional distress and physical impairment, including nausea, as a result of the offensive, abusive, outrageous, malicious, wanton, and willful conduct of Defendant COATES and Defendant CTS in sexually harassing her.

27.     Plaintiff MALPHURS found the conduct Defendant COATES and Defendant CTS to be humiliating, intimidating and threatening, and it interfered with her ability to do her job.

28.     As a result of such conduct by Defendant COATES and Defendant CTS, as described above in Paragraphs 18-19, Plaintiff MALPHURS was denied and not paid proper overtime compensation by Defendant COATES and Defendant CTS.

29.     As a result of such conduct by Defendant COATES and Defendant CTS, as described above in Paragraphs 13-19, Plaintiff MALPHURS experienced nausea as well as headaches, stomach aches, trouble sleeping, and felt scared and depressed.

30.     Prior to the offensive and abusive conduct and sexual harassment of Plaintiff MALPHURS by Defendant COATES and Defendant CTS, as more fully described above in Paragraphs 13-19, Defendant COATES sexually harassed other female employees who worked for Defendant COATES and Defendant CTS.

31.     Because Defendant COATES was the sole owner, and the principal officer and operator of Defendant CTS at all times relevant to the allegations above in Paragraph 30, Defendant CTS was aware of and had knowledge of such unlawful offensive, abusive, and sexually harassing conduct by Defendant COATES.

32.     Defendant CTS knew or should have known that Defendant COATES posed a risk of sexually harassing Plaintiff MALPHURS, through the conduct described above in Paragraphs 13-19.

33.     Throughout the period of Defendant CTS and Defendant COATES employed Plaintiff MALPHURS, Defendant CTS had no anti-discrimination, anti-sexual harassment, or anti-retaliation policy, written or otherwise.  Nor had Defendant CTS ever conducted sexual harassment training for employees.

## *CLAIMS AGAINST THE DEFENDANTS*

### *Count 1*
### *Defendant CTS and Defendant Joe Coates*
### *(29 U.S.C. § 207 – Overtime Compensation Due)*

34.     Plaintiff MALPHURS re-alleges paragraphs 1-33 above and incorporates them by reference as if fully set forth herein.

35.     By engaging in the above-described conduct, Defendant CTS and Defendant COATES violated the FLSA with respect to Plaintiff MALPHURS

by failing to pay her wages at a rate of 1.5 times their regular rate, for hours worked in excess of forty hours per week, in violation of 29 U.S.C. § 207.

36.    By engaging in the above-described conduct, Defendant CTS and Defendant COATES knowingly, intentionally and willfully violated the FLSA with respect to Plaintiff MALPHURS in violation of 29 U.S.C. § 255.

37.    Throughout the relevant period of this action, there is no evidence that the conduct of Defendants CTS and Defendant COATES that gave rise to this FLSA claim was in good faith and based on reasonable grounds for believing that their conduct did not violate the FLSA.

38.    As a direct and proximate result of the conduct of Defendants CTS and Defendant COATES, alleged above in Paragraphs 5-11, 18-19, 28 and incorporated as if fully set forth, Plaintiff MALPHURS has lost wages.

39.    As a direct and proximate result of the FLSA violations by Defendant CTS and Defendant COATES, as alleged in this Count 1, Plaintiff MALPHURS is entitled to recover from Defendant CTS and Defendant COATES her unpaid overtime compensation and an equal amount in the form of liquidated damages, pre-judgment and post-judgment interest, in addition to reasonable attorney's fees and costs of this action, all through the date of entry of judgment, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

***Count 2***
***Defendant Joe Coates***
***(Intentional Infliction of Emotional Distress)***

40.    Plaintiff MALPHURS re-alleges paragraphs 1-39 above and incorporates them by reference as if fully set forth herein.

41.    As a result of the above-described conduct, Plaintiff MALPHURS suffered intentional infliction of emotional distress in violation of Georgia law.

42.    The conduct directed to Plaintiff MALPHURS by Defendant COATES was intentional; the conduct was so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency; the wrongful conduct caused Plaintiff MALPHURS to suffer emotional distress; and Plaintiff MALPHURS' emotional distress was severe.

43.    As a result of the above-described conduct, Plaintiff MALPHURS has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

***Count 3***
***Defendant Joe Coates***
***(Battery)***

44.    Plaintiff MALPHURS re-alleges paragraphs 1-33 above and incorporates them by reference as if fully set forth herein.

- 13 -

45.    As a result of the conduct above-described in Paragraphs 14-15, Plaintiff MALPHURS suffered multiple instances of battery in violation of Georgia law by Defendant COATES.

46.    Defendant COATES intentionally made physical contact with an intimate part of Plaintiff MALPHURS' body without Plaintiff MALPHURS' consent.

47.    As a result of the conduct described in this Count 3, Plaintiff MALPHURS has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

### *Count 4*
### *Defendant Joe Coates*
### *(Invasion of Privacy)*

48.    Plaintiff MALPHURS re-alleges paragraphs 1-33, 40-47 above and incorporates them by reference as if fully set forth herein.

49.    As a result of the above-described conduct in Paragraphs 14-16, Plaintiff MALPHURS suffered invasion of privacy in violation of Georgia law by Defendant COATES.

50.    Defendant COATES's conduct, as described in this Count 4, constituted an intrusion upon the plaintiff's seclusion or solitude.

51.    As a result of the conduct described in this Court 4, Plaintiff MALPHURS has suffered and is continuing to suffer injury including

emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

### *Count 5*
### *Defendant CTS*
### *(Negligent Retention and Supervision)*

52.    Plaintiff MALPHURS re-alleges paragraphs 1-33, 40-51 above and incorporates them by reference as if fully set forth herein.

53.    As a result of Plaintiff MALPHURS suffering the above-described conduct in Paragraphs 5-54, including, but not limited to, intentional infliction of emotional distress, battery, and invasion of privacy, Defendant CTS is liable to Plaintiff MALPHURS under Georgia law for its negligent retention and supervision of Defendant COATES.

54.    Defendant CTS knew or should have known that by retaining Defendant COATES as an employee and by failing to appropriately supervise Defendant COATES in the workplace, it was reasonably foreseeable from his prior offensive conduct against Plaintiff MALPHURS and against other female employees that he could cause the type of harm sustained by Plaintiff MALPHURS.

55.    As a result of the above-described conduct, Plaintiff MALPHURS has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

- 15 -

### *Count 6*
### *Defendant CTS and Defendant Joe Coates*
### *(Nominal Damages)*

56.    Plaintiff MALPHURS re-alleges paragraphs 1-33, 40-55 above and incorporates them by reference as if fully set forth herein.

57.    The conduct of Defendant CTS and/or Defendant COATES, as set forth in the allegations above in Paragraphs 5-33, 40-55, entitles Plaintiff MALPHURS at a minimum and in the alternative to an award of actual damages, to nominal damages.

58.    As a result of the individual conduct of Defendant CTS and/or Defendant COATES, Plaintiff MALPHURS is entitled to an award of nominal damages pursuant to O.C.G.A. § 51-12-6.

### *Count 7*
### *Defendant CTS and Defendant Joe Coates*
### *(Punitive Damages)*

59.    Plaintiff MALPHURS re-alleges paragraphs 1-33, 40-58 above and incorporates them by reference as if fully set forth herein.

60.    The conduct of Defendant CTS and Defendant COATES, as alleged above in Paragraphs 5-33, showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences with regard to Plaintiff MALPHURS' allegations in this lawsuit

61.     As a result of the individual conduct of Defendant CTS and/or Defendant COATES, Plaintiff MALPHURS is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

### *Count 8*
### *Defendant CTS and Defendant Joe Coates*
### *(Litigation Expenses)*

62.     Plaintiff MALPHURS re-alleges paragraphs 1-33, 40-61 above and incorporates them by reference as if fully set forth herein.

63.     By engaging in the above-described conduct, Defendant CTS and/or Defendant COATES acted in bad faith, have been stubbornly litigious and have caused Plaintiff MALPHURS unnecessary trouble and expense.

64.     As a result of such conduct by Defendant CTS and/or Defendant COATES, Plaintiff MALPHURS is entitled her litigation expenses, including attorney's fees and costs related to this litigation, pursuant to O.C.G.A. § 13-6-11.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MALPHURS respectfully prays that this Court enter judgment in favor of the Plaintiff and against Defendant CTS and Defendant COATES for:

A.     All lost compensation including applicable overtime compensation calculated at one and one-half times the proper regular rate

that PLAINTIFF would have received but for DEFENDANTS' unlawful conduct under the FLSA;

     B.    Liquidated damages as provided for under the FLSA;

     C.    All reasonable attorney's fees and costs and expenses of suit arising from DEFENDANTS' violations under the FLSA through entry of judgment;

     D.    Pre-judgment and post-judgment interest on all amounts awarded pursuant to the FLSA, including lost compensation, liquidated damages, and attorney's fees and costs and expenses of suit;

     E.    All equitable, economic, compensatory, nominal and punitive damages, litigation expenses, including attorney's fees, costs, and expenses, and pre-judgment and post-judgment interest; and

     F.    All such other and further relief and benefits as the cause of justice may require, and as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

**PLAINTIFF hereby demands a jury trial on all claims for which she has a right to a trial by jury.**

                         Respectfully submitted,

                         **/s/ *Alan H. Garber***

                         ALAN H. GARBER

                         Georgia Bar No. 283840

                         MARC N. GARBER

                         Georgia Bar No. 283847

THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, Georgia 30068
(678) 560-6685
(678) 560-5067 (facsimile)
ahgarber@garberlaw.net
mngarber@garberlaw.net

***Counsel for the Plaintiff***