IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| AMANDA MALPHURS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:13-CV-443(MTT) |
| | ) |
| COOLING TOWER SYSTEMS, INC. and | ) |
| JOE COATES, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### ORDER

Defendants Cooling Tower Systems, Inc. ("CTS") and Joe Coates have moved for partial summary judgment. (Doc. 25). For the following reasons, the motion is **DENIED**. Plaintiff Amanda Malphurs has moved to withdraw copies of deposition transcripts. (Doc. 39). This motion is **GRANTED**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Coates is the sole owner and principal officer of CTS. (Doc. 25-3, ¶ 2). Malphurs is a former CTS employee. (Doc. 27-1, ¶ 1). She worked in an hourly-paid position from November 2011 to May 2012, and her duties included working in the Defendants' warehouse and posting cooling tower lines and related equipment for sale on an online auction website. (Docs. 27-1, ¶ 1; 27-2, ¶ 3; 38 at 27:25-28:3, 29:11-13; 40 at 49:24, 80:22).

Many of the facts of this case are in dispute. Malphurs's version of the facts is that throughout her employment at CTS, she was not properly compensated for overtime work and that Coates "sexually harassed [her] constantly." (Doc. 27-3, ¶¶ 5, 9). Coates required her to work late on numerous occasions so that he could be alone

with her and engage in offensive conduct and sexual harassment.  (*Id.*, ¶ 9).  Either Coates or a manager "repeatedly" clocked her out before she completed her work for the day.  (Doc. 27-2, ¶ 7).  She was also routinely required to work through her lunch hour by CTS managers, even though she was clocked out during that time.  (*Id.*, ¶¶ 6-7).  She estimates that she worked nine Saturdays cleaning the CTS offices and/or Coates's apartment.  (Docs. 25-12 at 4; 41 at 48:10-18, 49:21-50:8).  After complaining that she was not being paid for the overtime work, Coates paid her about $250 in cash.  (Doc. 25-12 at 3).  Coates refused to compensate her for the rest of her overtime work unless she gave into his sexual demands.  (Docs. 27-2, ¶ 5; 27-3, ¶ 10).  She estimates that she is owed $1,862.61 for unpaid overtime.  (Doc. 25-12 at 5).

Malphurs says she suffered nausea, pain, depression, anxiety, panic attacks, and nightmares as a result of Coates's conduct.  (Doc. 27-2, ¶¶ 14-16).  She did not receive medical treatment for these conditions because she did not have health insurance, and she could not afford to pay for treatment herself.  (*Id.*, ¶ 17).  Instead, she spoke to her mother and sister, both nurses, about her "emotional and psychological problems."  (*Id.*).

The Defendants' version of the story is that Malphurs did not work overtime: "it is our position … that [Malphurs's overtime] figures, estimates of figures, even guesses of figures, are, in fact, made up."  (Docs. 25-1 at 5; 28 at 1).  Coates testified that CTS's overtime policy is that anyone who works over forty hours a week will be paid time and a half for overtime.  (Doc. 38 at 78:21-82:2).  He specified, however, that overtime is rarely an issue because "we never work Saturdays[, w]e never work after five[, and w]e never work during our lunchbreak."  (*Id.* at 79:17-20).

Coates also submitted an affidavit stating that "[t]he conduct of which MALPHURS complained and the wrongful conduct alleged in the Complaint never occurred" and that he "never touched MALPHURS in an illegal, unlawful, wrongful or improper manner." (Doc. 25-3, ¶¶ 6-7). He also testified that he has "never asked any employee for sex." (Doc. 37 at 158:1).[1] When asked about specific allegations of sexual harassment in a complaint Malphurs filed with CTS when she quit, Coates denied them all. (*Id.* at 134:19-140:19).

On September 13, 2012, Malphurs filed suit in Bibb County Superior Court against the Defendants alleging state law claims of intentional infliction of emotional distress, sexual battery, and assault against Coates, and a claim of negligent retention and supervision against CTS. (Doc. 25-7 at 7-11). On November 17, 2013, while the Defendants' motion for summary judgment was pending, Malphurs voluntarily dismissed that suit without prejudice and filed her complaint in this Court on November 21. (Docs. 1; 25-10). Her federal complaint adds a claim for violations of the Fair Labor Standards Act ("FLSA") to her state law claims of intentional infliction of emotional distress, sexual battery, and negligent retention and supervision. (Doc. 1). The Defendants have now moved for summary judgment on all but the battery claim. (Doc. 25).

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

---

[1] The Court has cited the deposition page number instead of the CM/ECF page number.

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Analysis

#### 1. Overtime Claim

FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). To prevail on a FLSA overtime claim, an employee must prove that he was "suffered or permitted to work [overtime] without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). "[A] FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) [the employer] knew or should have known of the overtime work." *Id.* at 1314-15.

### a. Whether Malphurs worked overtime without compensation

The Defendants contend Malphurs is unable to demonstrate she performed uncompensated overtime. They argue that Malphurs's estimates based on her recollection are insufficient to meet her burden, asserting that Malphurs's "figures, estimates of figures, even guesses of figures are, in fact, made up. At best, they are uncertain, speculative and conjectural." (Doc. 25-1 at 5-8).

"The remedial nature of [FLSA] and the great public policy which it embodies ... militate against making [the prima facie] burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*. "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment," and it is the employer "who is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed." *Allen*, 495 F.3d at 1314 (citing *Anderson*, 328 U.S. at 687).

The Eleventh Circuit uses the burden shifting framework from *Anderson v. Mt. Clemens Pottery Co.* for "situations where the employer's records cannot be trusted and the employee lacks documentation." *Id.* at 1316. "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (citation and internal quotation marks omitted). "The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Malphurs has listed the weeks she worked overtime, an estimate of the amount of overtime she worked each week, and the amount she is owed for this overtime. (Doc. 25-12 at 3-5). Based on her estimate of the days she worked overtime without compensation and the amount of time she worked each day, the amount she contends is due for this work is $1,862.61. (*Id.*). Malphurs also testified that a manager, Raye Kelley, instructed her to indicate on her time sheet that she took lunch even when she worked through her lunch hour. (Doc. 41 at 51:9-25).[2] If she did not, she testified that someone would alter her time sheet to reflect an incorrect time. (*Id.* at 51:18-53:13). Clearly, Malphurs has carried her initial burden of proving that she was not compensated for overtime work and the amount of that overtime.

In an apparent effort to discharge its burden, the Defendants simply rely on Malphurs's time cards and challenge her credibility. (Docs. 25-1 at 8; 25-11; 28 at 3-5). Given that Malphurs testified that she was told by her supervisor not to record her overtime, this is hardly sufficient to satisfy the Defendants' burden to produce evidence

---

[2] The Court has cited the deposition page number instead of the CM/ECF page numbers for this document.

of the precise amount of work she performed or negate the reasonableness of inferences to be drawn from her evidence. Accordingly, Malphurs has sufficiently established she worked overtime without compensation to withstand summary judgment.

### b. Whether the Defendants knew or should have known of the overtime work

In their motion and briefs, the Defendants address only the issue of whether Malphurs has sufficiently established the amount of overtime she worked and make no mention of whether they had knowledge of her overtime work. Malphurs, on the other hand, has adduced considerable evidence of their knowledge.

Malphurs testified that when she worked Saturdays either Coates or a manager, Rick Miller, were with her because someone had to be there to let her in and lock up afterward. (Doc. 41 at 44:3-45:2, 48:19-49:17). She has also testified that a manager, Kelley, instructed her to clock out when she worked through lunch; if she did not, someone would change her time card. (*Id.* at 52:9-54:2). If Coates or managers representing the company knew that Malphurs was working without being clocked in because they instructed her to do so, then the Defendants knew or should have known she was working overtime without compensation. *See Bailey v. TitleMax of Ga.*, 776 F.3d 797, 801 (11th Cir. 2015) (holding that an employer knew or should have known the employee worked overtime because the supervisor was "explicitly instructing [the employee] to underreport his time by working off the clock [and] changing [the employee's] time records to show fewer hours worked.").

"Knowledge may be imputed to the employer when its supervisors or management 'encourage[] artificially low reporting.'" *Id.* (alteration in original) (quoting

*Allen*, 495 F.3d at 1314-15). "At summary judgment, it is Defendants' burden to support the motion by reference to materials on file that demonstrate the absence of any genuine issue of material fact as to its knowledge, whether actual or constructive, of Plaintiffs' overtime work." *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1369 (S.D. Ga. 2015); *see also Allen*, 495 F.3d at 1319.

Clearly, the Defendants have failed to demonstrate the absence of any genuine issue of material fact as to their knowledge of overtime work. Summary judgment is denied.

### 2. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, a plaintiff's burden is "stringent." She must demonstrate that:

> (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

*Steed v. Fed. Nat. Mortg. Corp.*, 301 Ga. App. 801, 810, 689 S.E.2d 843, 851–52 (2009) (citation omitted). Coates contends that even assuming Malphurs's allegations about his conduct are true, his conduct as a matter of law still falls sort of intentional infliction of emotional distress. (Doc. 25-1 at 11). He asserts that Malphurs cannot meet the second or fourth elements of the prima facie case because the conduct was not sufficiently outrageous and the emotional distress was not sufficiently severe. (*Id.*).

### a. Whether the conduct was extreme and outrageous

"The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim[,] 'Outrageous!'" *Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 453, 651 S.E.2d 790, 792 (2007) (internal quotation marks and citation omitted).  Factors to consider include "the existence of a relationship in which one person has control over another, the actor's awareness of the victim's particular susceptibility, and the severity of the resultant harm." *Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498, 499–500, 469 S.E.2d 776, 778 (1996) (citations omitted).

The workplace setting is a factor, as well.  "The opportunity for commission of the tort is more frequently presented in the workplace than in casual circumstances involving temporary relationships."  *Coleman v. Hous. Auth. of Americus*, 191 Ga. App. 166, 169, 381 S.E.2d 303, 306 (1989); *see also Hendrix v. Phillips*, 207 Ga. App. 394, 395, 428 S.E.2d 91, 93 (1993) ("The court has recognized that the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist." (internal quotation marks and citations omitted)).  This is because "by its very nature, [the workplace] provides an environment more prone to such occurrences because it provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships which cannot easily be avoided." *Coleman*, 191 Ga. App. at 169, 381 S.E.2d at 306.

Coates asserts that his alleged conduct, while "offensive, tasteless[,] and rude," does not rise to the level of severity required for this element of an intentional infliction of emotional distress claim. (Doc. 25-1 at 11). Coates compares his conduct to that in *Hendrix*, in which the Georgia Court of Appeals held that

> a series of comments and acts [the plaintiff] alleges [her co-worker] committed, including showing her a drawing he made depicting fecal matter moving through a colon; showing her a hole in the crotch of his pants and asking her, in the presence of co-workers, if she would like to staple the hole closed; a lewd gesture referring to sexual activity he supposed she engaged in with her husband on a vacation trip; a verbal confrontation in a working meeting at which he cursed the plaintiff; and a series of complaints he filed against her with a supervisor

were not sufficiently outrageous for an intentional infliction of emotional distress claim. 207 Ga. App. at 394-95, 428 S.E.2d at 92; (Doc. 25-1 at 8-9).

Malphurs, on the other hand, compares Coates's conduct with that in *Coleman* and *Trimble*. (Doc. 27 at 12-14). In *Coleman*, the plaintiff alleged that over a period of three years, her supervisor would "call her into his office on business and then inexplicably veer off into personal matters involving sex." 191 Ga. App. at 168, 381 S.E.2d at 305. These matters included: showing her cartoons of a sexual nature and inquiring if she and her husband had engaged in the acts depicted; inquiring how she and her husband had sex; seeking to "engage her in conversation about masturbation and the sexual preferences of black women"; offering her a pornographic video and offering to exchange movies with pornographic content; telling sexual and racist jokes; paying her sexual compliments; and making comments that the plaintiff believed to imply an assignation. *Id*. The supervisor never touched the plaintiff. *Id*. The Georgia Court of Appeals held that, while some of the incidents, standing alone, "would not amount to actionable infliction of emotional distress by way of sexual harassment," "the

repetition, over her protests, could be found to have a cumulative effect," especially considering the workplace setting. *Id.* at 169, 381 S.E.2d at 306. "The argument that such remarks were insignificant to cause harm belittle but do not defeat the claim." *Id.* These allegations were sufficient to withstand summary judgment. *Id.* at 170, 381 S.E.2d at 306.

In *Trimble*, the plaintiff alleged that her supervisor sexually harassed her by repeatedly hugging her, rubbing up against her body, and making lewd comments and gestures. 220 Ga. App. at 498, 469 S.E.2d at 777. She also alleged he placed his hands down her shirt on one occasion. *Id.* The Georgia Court of Appeals held that her allegations were sufficient to survive a motion to dismiss, especially considering the workplace setting. *Id.* at 500, 469 S.E.2d at 778.

Malphurs contends that Coates's harassment, like that in *Coleman* and *Trimble*, was "constant, repetitive, and in the workplace." (Doc. 27 at 14). She also asserts that he "exploit[ed] his position at CTS as sole owner and principal operator [by] refus[ing] to pay for her overtime without getting sex in exchange." (Doc. 27 at 14). She further points out that in *Coleman*, the supervisor never touched the plaintiff, while Coates touched her repeatedly. (*Id.* at 13-14).

> Malphurs has alleged that
>
> Coates's acts of physical and verbal sexual harassment of [Malphurs] involved:
> a. Numerous times, … Coates pressed his groin against [Malphurs's] buttocks when she was standing up or her shoulder when seated—and she felt him rubbing his erect penis against her.
> b. Several times, … Coates grabbed [Malphurs's] hand and pressed it against his crotch
> c. Numerous times … Coates tried to kiss her, and, on at least one occasion, he made actual physical contact with her lips.

> d. Several times, … Coates put his hand down [Malphurs's] shirt, inside her bra, and touched her breast.
> e. Several times, … Coates put his hands on [Malphurs's] breasts, outside her shirt, and then squeezed her nipples.
> f. Numerous times, … Coates fondled [Malphurs's] breasts on the outside of her shirt.
> g. On numerous occasions, … Coates said to [Malphurs], "I want to fuck you, baby."
> h. … Coates often asked [Malphurs] to have sex with him.
> i. On several occasions, … Coates pulled the front of [Malphurs's] shirt open so he could look down her shirt at her breasts.
> j. On repeated occasions, … Coates told [Malphurs], "I want to play with your titties, baby."
> k. … Coates often told [Malphurs], "I want to give you some of this Cherokee peter" or "Cherokee dick"—referring to his penis and the fact that he claimed he was part Cherokee Indian.

(Doc. 27-2, ¶ 13). Comparing his alleged conduct to that in *Coleman* and *Trimble*, the Court cannot find as a matter of law that Coates's conduct was not extreme and outrageous.

### b. Whether the emotional distress was severe

> [E]motional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.

*Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 858, 678 S.E.2d 555, 560 (2009) (alterations in original) (citation and internal quotation marks omitted). "The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress. Whether a claim of severe emotional distress is found is a question for the court." *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323, 723 S.E.2d 721, 723 (2012) (footnotes and internal quotation marks omitted).

Coates asserts that there is no evidence that Malphurs's emotional distress was severe because she did not suffer a physical injury or receive treatment from a medical or mental health professional. (Doc. 25-1 at 11-12). He relies on *Hill v. Macon Police Dep't*,[3] in which this Court, Judge Royal presiding, found sleeplessness and anxiety insufficient evidence of severe distress. 2013 WL 594200, at *14. The Court also found an increase in seizures insufficiently severe because the plaintiff did not consult a physician about the increase. *Id.*

Malphurs continues to rely on *Coleman*, in which the plaintiff's evidence of headaches, crying, chest pain, upset, despondency, and depression was sufficient to withstand summary judgment. 191 Ga. App. at 168, 170. Malphurs contends that she similarly "suffered physical manifestations of severe distress" such as nausea and "mental and emotional symptoms" of panic attacks, severe depression, anxiety, sleeplessness, and nightmares of being raped by Coates. (Docs. 27 at 14; 40 at 85:13-86:5, 19, 87:12-17) (emphasis omitted). The Court cannot find as a matter of law that her distress was not severe.[4]

### 3. Invasion of Privacy

Under Georgia law, the concept of invasion of privacy has been divided into four torts: "(1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing facts about the plaintiff; (3) publicity which places

---

[3] 2013 WL 594200 (M.D. Ga.).

[4] Coates also contends that Malphurs's only effort to seek medical treatment was one call to one provider, and a "'severe injury' demands more effort to obtain treatment." (Doc. 28 at 6-7). Malphurs responds that she did not obtain professional care because she does not have health insurance and could not afford to pay for it herself; she spoke to two nurses in her family about her "emotional problems" instead. (Docs. 27 at 15; 40 at 85:2-11, 86:12-17). Coates has cited no authority to support his position that medical treatment is a requirement rather than simply a factor to prove severe emotional distress or the minimum amount of effort a plaintiff must make.

the plaintiff in a false light in the public eye; and (4) appropriation for the defendant's advantage, of the plaintiff's name and likeness." *Troncalli v. Jones*, 237 Ga. App. 10, 13, 514 S.E.2d 478, 482 (1999) (citation and internal quotation marks omitted).

Malphurs has asserted a claim for intrusion upon seclusion. "The 'unreasonable intrusion' aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 705, 409 S.E.2d 835, 837 (1991) (citation omitted). The Georgia Supreme Court has stated that "[h]ighly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." *Id.* (citation omitted). Actionable intrusions include the "unwanted, physical touching of the plaintiff." *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 137, 709 S.E.2d 314, 318 (2011).

Coates contends that "the physical intrusion element can only be based upon the allegations of battery. The tort of invasion of privacy would, in these circumstances duplicate the tort of battery." (Doc. 25-1 at 14-15). He relies on *Allstate Ins. Co. v. Ginsberg*,[5] in which the Florida Supreme Court answered the Eleventh Circuit's certified question that Florida's invasion of privacy tort does not encompass "touching in a sexual manner and sexually offensive comments." *Id.* at 474-75; (Doc. 25-1 at 15). Rather, the Florida Supreme Court made it clear that "the tort of invasion of privacy was not intended to be duplicative of some other tort. Rather, this is a tort in which the focus is the right of a private person to be free from public gaze." *Id.* at 481.

The Georgia Court of Appeals, however, has clearly stated that "unwanted, physical touching of the plaintiff" can be an invasion of privacy. *Benedict*, 309 Ga. App.

---

[5] 351 F.3d 473 (11th Cir. 2003).

at 137; *see also Troncalli*, 237 Ga. App. at 14, 514 S.E.2d at 482 (affirming trial court's denial of defendant's motion for a directed verdict on an intrusion on seclusion claim because there was evidence that the defendant "intentionally brushed up against and intentionally touched [the plaintiff's] breasts; he followed her in his car; he made a threatening gesture at her; he put his mouth on her neck; he followed her when she tried to get away; and he came to her house and knocked loudly on the door"). Malphurs has alleged a number of instances of unwanted touching, described in detail above, which she contends were more offensive than the conduct at issue in *Troncalli*. (Doc. 27 at 16). This falls within the "unwanted, physical touching" described in Georgia case law. Summary judgment is inappropriate.

### 4. Negligent Retention and Supervision

Because Malphurs's claim against CTS for its negligent retention and supervision of Coates is based solely on negligence, Malphurs must satisfy Georgia's "impact rule." The impact rule allows "recovery for emotional distress … only where there is some impact on the plaintiff, and that impact must be a physical injury." *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584, 533 S.E.2d 82, 84 (2000) (citation and internal quotation marks omitted). CTS asserts that Malphurs has not alleged she incurred a physical injury, so her claim for negligent retention and supervision must fail under the impact rule. (Doc. 25-1 at 16-17). Malphurs argues that her allegations of unwanted touching against Coates for battery and invasion of privacy are sufficient to satisfy the physical injury requirement of the impact rule. (Doc. 27 at 17-18).

Malphurs misses the point. Mere unwanted touching is not a physical injury for purposes of the impact rule. *See H.J. Russell & Co. v. Jones*, 250 Ga. App. 28, 31, 550 S.E.2d 450, 453 (2001) (finding no physical injury under the impact rule even though an

employee of the defendant company frequently touched the plaintiff inappropriately). Malphurs's reliance on *Metro Atlanta Rapid Transit Auth. v. Mosley*[6] to support her argument is based on a troubling misstatement of its holding. (Doc. 27 at 17). She states that the court "rejected MARTA's argument that no 'physical injury' occurred," but she quotes from the Court's discussion of the battery claim against MARTA's employee. (Doc. 27 at 17). The court denied the employee's motion for summary judgment, finding that the alleged touching was sufficient to constitute a battery. 280 Ga. App at 488-89, 634 S.E.2d at 468-69. This had nothing to do with the negligent retention claim against MARTA. In fact, nowhere in the court's opinion is the impact rule even mentioned.

Despite this error, which, again, the Court finds troubling, Malphurs has nonetheless sufficiently alleged a physical injury under the impact rule. She points to her testimony that Coates "put[] his hand down [her] shirt and squeez[ed her] nipples" and "snatched [her] hair and pulled [her] hair back" and that she has been nauseous. (Doc. 40 at 34:1-2, 70:4-5, 85:15). Her declaration further explains that her "neck hurt for a day or so" after Coates pulled her hair, and her nipples "would hurt for a few days" after Coates squeezed them. (Doc. 27-3, ¶¶ 6-7). Under Georgia law, this is sufficient to withstand summary judgment. *See Jordan v. Atlanta Affordable Hous. Fund, Ltd.*, 230 Ga. App. 734, 735-36, 498 S.E.2d 104, 106 (1998) (holding that summary judgment was properly denied because the plaintiff's deposition testimony that "she was yanked by the hair down the hallway[,] creat[ing] a reasonable inference she suffered some physical injury," coupled with her affidavit that her head and scalp hurt for several days

---

[6] 280 Ga. App. 486, 634 S.E.2d 466 (2006).

afterward was sufficient to establish a physical injury under the impact rule).  Summary judgment is denied.[7]

### 5. Punitive Damages and Litigation Expenses

CTS moved for summary judgment on Malphurs's punitive damages and litigation expenses claims based solely on its assertion that the claim for negligent retention and supervision fails as a matter of law.  (Doc. 25-1 at 18-19).  However, that claim does not fail as a matter of law, and thus summary judgment is denied for these claims.

### III. MOTION TO WITHDRAW COPIES OF DEPOSITION TRANSCRIPTS

Malphurs has moved to withdraw deposition transcripts because she filed copies of the transcripts instead of the original transcripts.  (Doc. 39).  She has since filed the original transcripts.  (Docs. 36-38).  This motion is **GRANTED**.  The copies filed at Docs. 34 and 35 may be withdrawn.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **DENIED**.  (Doc. 25).  Malphurs's motion to withdraw copies of deposition transcripts is **GRANTED**.  (Doc. 39).

**SO ORDERED**, this 4th day of March, 2016.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT

---

[7] CTS also argues against applying respondeat superior and ratification.  (Doc. 25-1 at 17-18).  However, Malphurs has not made those claims in her complaint.  (Doc. 1).